# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MOHAMMAD MOMENNIA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-1067-J** |
| | ) | |
| **PAMELA BONDI, Attorney General, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Mohammad Momennia, represented by counsel, filed a Verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1).[1] United States District Judge Bernard M. Jones referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). (Doc. 8). Respondents filed a Response in Opposition to Petitioner's Verified Petition for Writ of Habeas Corpus. (Doc. 14). Mr. Momennia filed a Reply. (Doc. 15). For the reasons set forth below, the undersigned recommends that Mr. Momennia be **GRANTED** habeas relief and released from custody immediately.

---

[1] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

I.      **Factual Background[2] and Procedural History**

Mr. Momennia is an Iranian citizen who arrived in the United States with a student visa in 1977.  (Doc. 1, at 1).  He eventually became a lawful permanent resident of the United States.  (*Id.* at 1–2).

On March 11, 1993, Mr. Momennia was convicted of second-degree robbery, assault and battery, and pointing a firearm in the District Court of Oklahoma County.  (*See* Doc. 14, at 8); *see also* Oklahoma County District Court, Case No. CF-1992-2167.[3]  On January 14, 1994, Mr. Momennia also pleaded guilty to making a false claim for insurance and obtaining money under false pretenses in the District Court of Oklahoma County.  (*See* Doc. 14, at 8); *see also* Oklahoma County District Court, Case No. CF-1993-1016.[4]  On June 7, 1995, Immigration and Naturalization Services ("INS") began removal proceedings against Mr. Momennia based on his criminal history.  (Doc. 14, at 8).  On September 3, 1997, INS entered a final removal order.  (*Id.*)

---

[2] The following facts are alleged by either Mr. Momennia or Respondents and either corroborated or not contested by the opposing party.  (*See* Doc. 1; Doc. 14).

[3] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-1992-2167&cmid=27479 (*Docket Sheet*) (last visited Oct. 15, 2025).  The undersigned takes judicial notice of the docket sheets and related documents in Mr. Momennia's state criminal proceedings. *See United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (exercising discretion "to take judicial notice of publicly-filed records in [this] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand") (citation omitted).

[4] https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=CF-1993-1016&cmid=34160 (*Docket Sheet*) (last visited Oct. 15, 2025).

INS detained Mr. Momennia on December 20, 2002, to effectuate his deportation to Iran. (*Id.* at 9). On February 17, 2004, Mr. Momennia filed a habeas petition seeking relief from his continued detention. *Momennia v. Ashcroft*, W.D. Okla. Case No. 04-CIV-152-M (Doc. 1). On March 18, 2004, The Enforcement and Removal Operations division of United States Immigration and Customs Enforcement ("ICE")[5] released Mr. Momennia from detention on an Order of Supervision ("OOS") because they could not secure Mr. Momennia's travel documents from the government of Iran. (Doc. 14, at 9–10; *id.* at Ex. 2; Doc. 1, at 2). As a result, Mr. Momennia's habeas petition was dismissed as moot. *Momennia v. Ashcroft*, W.D. Okla. Case No. 04-CIV-152-M (Doc. 21, Apr. 14, 2004).

As part of his OOS, Mr. Momennia completed regular check-ins with ICE for over twenty years. (Doc. 1, at 2). On March 28, 2025, ICE re-detained Mr. Momennia at one such check-in, and Mr. Momennia has remained in ICE detention through today. (*Id.* at 2-3). He is currently housed at the Cimarron Correctional Facility in Cushing, Oklahoma. (*Id.* at 3).

Mr. Momennia "has previously applied for travel documents from Iran, but his application was denied and he was told his name shows up as belonging to a deceased person in Iran's systems." (Doc. 1, at 2-3). "On or about April 14, 2025, the Iranian Interest Section denied the request for travel documents, stating [ICE] must submit either an original Iranian birth certificate or an original Iranian passport." (Doc. 14, at Ex. 2). ICE does not have either an original Iranian birth certificate or an original Iranian passport for

---

[5] On March 1, 2003, the INS was dissolved and relevant duties were given to ICE. *See* https://www.ice.gov/features/history.

Mr. Momennia. (*Id.*) Mr. Momennia told ICE that he does not have either an original Iranian birth certificate or an original Iranian passport. (*Id.*) ICE "sent Momennia's case to the State Department to facilitate a third country removal. It is primarily the State Department that is working with countries to accept the third county nationals." (Doc. 14, at Ex. 4). ICE is "not aware of a third country's acceptance of Momennia at this time." (*Id.*) The State Department, DHS, and ICE are "working together on this removal." (*Id.*)

On September 15, 2025, Mr. Momennia filed the instant § 2241 petition.[6] (Doc. 1). Mr. Momennia asserts that his continued detention violates the Fifth Amendment's Due Process Clause, relevant federal regulations, and the Administrative Procedures Act. (*Id.* at 18-20). Mr. Momennia requests habeas relief in the form of immediate release from detention. (*Id.* at 21). He also requests various other relief, including injunctive and declaratory relief. (*Id.* at 21-22). As set forth fully below, the undersigned recommends that Mr. Momennia be granted relief under § 2241(c)(3) and immediately released from custody.

---

[6] "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration-related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas."); *Head v. Keisler*, No. 07-CIV-402-F, 2007 WL 4208709, at *2 (W.D. Okla. Nov. 26, 2007) (determining that "[t]his Court has subject matter jurisdiction over" unconstitutional detention in immigration-related § 2241 habeas petition).

## II.    Legal Framework for the Continued Detention of Aliens Subject to a Final Order of Removal

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). This is known as the "removal period," and begins at the latest of (1) "[t]he date the order of removal becomes administratively final," (2) "the date of a court's final order" staying removal, or (3) " the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.  See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

"If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall [ordinarily] be subject to supervision." 8 U.S.C. § 1231(a)(3). However, an exception exists for certain aliens, including aliens who have violated criminal law, who "may be detained beyond the removal period." § 1231(a)(6); *see Zadvydas*, 553 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)); *Head v. Keisler*, No. 07-CIV-402-F, 2007 WL 4208709, at *2 (W.D. Okla. Nov. 26, 2007) ("If an alien is not

deported during the 90-day removal period, certain classes of aliens, including inadmissable aliens and criminal aliens, may continue to be subject to detention if they have not yet been removed."). "Related [ICE] regulations add that [ICE] will initially review the alien's records to decide whether further detention or release under supervision is warranted after the 90–day removal period expires." *Zadvydas*, 553 U.S. at 683 (explaining various provisions of 8 C.F.R. § 241.4).

Section 1231(a)(6) does not specify how long criminal aliens may be detained beyond the removal period. However, the *Zadvydas* Court held that § 1231(a)(6), "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day removal period. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Following the Supreme Court's holding, the *Zadvydas* challenge to continued detention was codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[7] The

---

[7] *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the

new regulations were in place at the time of Mr. Momennia's first detention in December 2002, his release on supervision in March 2004, and his re-detention in March 2025.

## III.   ICE Has Violated Its Own Regulations By Continuing To Detain Mr. Momennia.

### A.   Section 241.4 Governs Mr. Momennia's Original Release and Revocation of Release.

Mr. Momennia alleges that following his original detention, he "was released on an Order of Supervision ('OOS') issued pursuant to 8 CFR 241.4(e) on March 18, 2004, because it was determined there was no significant likelihood of removal in the reasonably foreseeable future." (Doc. 1, at 2). The undersigned agrees that Mr. Momennia was released under the stated regulation, but does not agree that ICE made such a determination. Section 241.4(e) provides:

> (e) Criteria for release. Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:
>
> > (1) **Travel documents for the alien are not available** or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
> > (2) The detainee is presently a non-violent person;
> > (3) The detainee is likely to remain nonviolent if released;
> > (4) The detainee is not likely to pose a threat to the community following release;

---

custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

(5) The detainee is not likely to violate the conditions of
release; and
(6) The detainee does not pose a significant flight risk if
released.

(Emphasis added).  Release under this provision does not require ICE to determine the

likelihood of removal.  However, Respondents have provided evidence to establish that

Mr. Momennia was released on an OOS because ICE "had been unable to obtain travel

documents from the government of Iran." (Doc. 14, at Ex. 2, Dec. of K. Legg).  This is

consistent with an affidavit that was provided by ICE in April 2004 in connection with Mr.

Momennia's habeas petition in *Momennia v. Ashcroft*, W.D. Okla. Case No. 04-CIV-152-

M (Doc. 14, at Ex. 1, stating that "[o]n March 18, 2004, [Mr. Momennia] was released

from the custody of ICE because we had not yet obtained a travel document for removal to

Iran.").  Thus, it appears that ICE released Mr. Momennia after making the necessary

conclusions under § 241.4(e).

Mr. Momennia alleges that his release was revoked on March 28, 2025, pursuant to

§ 241.13(i).  (*See* Doc. 1, at 12, 14).  This is incorrect.  Section 241.13(i) provides that

procedures for a revocation of release under this section are only applicable when the alien

was originally released under an order of supervision "under this section." (Emphasis

added).  *See Grigorian v. Bondi*, 2025 WL 2604573, at *4–5 (S.D. Fla. Sept. 9, 2025)

("Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where

ICE has formally determined that there is no significant likelihood that the alien will be

removed in the reasonably foreseeable future.").

As discussed above Mr. Momennia was released on supervision under § 241.4. Respondents do not specify the provision under which it revoked Mr. Momennia's release, stating only that it "placed Momennia into detention . . . with the intent to remove him to Iran or a third country based on his final order of removal." (Doc. 14, at Ex. 2). This revocation does not run afoul of the exceptionally broad authority that ICE has to revoke release under § 241.4, which provides:

(l) Revocation of release—

(1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

(2) Determination by the Service. **The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section.** A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) **It is appropriate to enforce a removal order** or to commence removal proceedings against an alien; or
(iv) The conduct of the alien, **or any other circumstance, indicates that release would no longer be appropriate.**

(Emphasis added).  It is not alleged by Mr. Momennia or Respondents that he violated any condition of his release.  However, under § 241.4(l)(2), apparently "any circumstance" may support the "discretion[ary]" "opinion" of the revoking official that release is no longer "appropriate" and/or that it is "appropriate" to enforce the removal order.  The renewed "intent to remove" Iranian nationals who have been previously ordered removed "to Iran or a third country" likely satisfies this standard.

However, once Mr. Momennia's release was revoked under § 241.4(l), he was entitled to certain review procedures under that section at certain intervals.  Section 241.4(l)(3) provides:

> Timing of review when release is revoked. If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director **shall schedule the review process in the case of an alien whose previous release** or parole from immigration custody pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner **under the procedures in this section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked.** That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

(Emphasis added).  Neither Mr. Momennia nor Respondents alleges whether he received the informal interview or whether the requirements of the custody review process have been met within the three months after the revocation of release on March 28, 2025 (*i.e.*, by June 26, 2025), or following.  However, that three-month period had well lapsed by the

time Mr. Momennia filed his habeas petition on September 15, (Doc. 1), and by October 6,

when Respondents filed their opposition to the petition, (Doc. 14).

Regardless, the custody review process of § 241.4 specifically requires ICE to cross-

reference § 241.13, the regulation codifying *Zadvydas*, in certain cases.  It provides:

> No significant likelihood of removal. **During the custody review process** as provided in this paragraph (i), or at the conclusion of that review, **if the alien submits, <u>or the record contains</u>, information providing a substantial reason to believe that the removal of a detained alien is not significantly likely in the reasonably foreseeable future**, the **[Headquarters Post-Order Detention Unit] shall treat that as a request for review and initiate the review procedures under § 241.13.** To the extent relevant, the HQPDU may consider any information developed during the custody review process under this section in connection with the determinations to be made by the Service under § 241.13. The Service shall complete the custody review under this section unless the HQPDU is able to make a prompt determination to release the alien under an order of supervision under § 241.13 because there is no significant likelihood that the alien will be removed in the reasonably foreseeable future.

8 C.F.R. § 241.4(i)(7) (emphasis added). In this case, whether Mr. Momennia submitted it

or not during the custody review process, it is clear that his "record contain[ed] information

providing a substantial reason to believe that the removal of a detained alien is not

significantly likely in the reasonably foreseeable future." *Id*.  Indeed, Respondents

acknowledge that in 2004, ICE was "unable to obtain travel documents from the

government of Iran."  (Doc. 14, at Ex. 2).  Moreover, Respondents concede that "[o]n or

about April 14, 2025, the Iranian Interest Section denied the request for travel documents,

stating [ICE] must submit either an original Iranian birth certificate or an original Iranian

passport. [ICE] does not have either of these documents and Momennia told [ICE] that he

11

does not have these documents." (*Id.*)  Thus, ICE was obligated to initiate review under §

241.13.

**B.    Section 241.13 Governs Whether Mr. Momennia Should Now Be Released.**

Section 241.13(e) sets forth the process for a review of the likelihood of

removability, including that ICE:

- shall respond in writing to the request for review within 10 days and explain the procedures that will be used to evaluate the request, 8 C.F.R. § 241.13(e)(1);

- shall advise the alien of any efforts he needs to make to assist in securing travel documents, § 241.13(e)(2);

- "may, in the exercise of its discretion, forward a copy of the alien's release request to the Department of State for information and assistance. The Department of State may provide detailed country conditions information or any other information that may be relevant to whether a travel document is obtainable from the country at issue. The Department of State may also provide an assessment of the accuracy of the alien's assertion that he or she cannot be returned to the country at issue or to a third country," § 241.13(e)(3);

- "shall permit the alien an opportunity to respond to the evidence on which the Service intends to rely, including the Department of State's submission, if any, and other evidence of record presented by the Service prior to any HQPDU decision," § 241.13(e)(4); and

- may grant an interview to the alien, § 241.13 (e)(5).

Section 241.13(f) then sets forth the "factors for consideration" for ICE in making its

determination as to the likelihood of removability:

> The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State

regarding the prospects for removal of aliens to the country or countries in question. **Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.**

(Emphasis added). ICE is required to issue a written decision. § 241.13(g). "If the HQPDU determines . . . that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, despite the Service's and the alien's efforts to effect removal, . . . the Service shall promptly make arrangements for the release of the alien subject to appropriate conditions." § 241.13(g)(1). If ICE "determines at the conclusion of the review that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future, the HQPDU shall deny the alien's request." § 241.13(g)(2). Significantly, "[t]here is no administrative appeal from the HQPDU decision denying a request from an alien under this section." *Id.*

Again, it is mostly unclear from the record before the Court whether or to what extent ICE has followed any of its own regulatory procedures in this matter. However, Mr. Momennia has now been detained for six and a half months past the revocation of his release on supervision. ICE should have initiated a custody review determination under § 241.4 within approximately three months after his revocation. That review should have triggered an evaluation under § 241.13 of his likelihood of removability. Mr. Momennia remains in custody, and according to ICE, it has no intent to release him back on supervision. (*See* Doc. 14).

Respondents, through their opposition to Mr. Momennia's habeas petition, have had the opportunity to apprise the Court as to all facts ICE has available for administratively

evaluating his case. On this record, ICE cannot, under its own regulations, find that there is a significant likelihood that Mr. Momennia will be removed in the reasonably foreseeable future. Indeed, all of the § 241.13(f) factors weigh in favor of Mr. Momennia's release, due to the facts that have been alleged and either corroborated or not controverted by the parties:

(1)    In 2004, ICE was "unable to obtain travel documents from the government of Iran." (Doc. 14, at Ex. 2).

(2)    Mr. Momennia "has previously applied for travel documents from Iran, but his application was denied and he was told his name shows up as belonging to a deceased person in Iran's systems." (Doc. 1, at 2-3).

(3)    "On or about April 14, 2025, the Iranian Interest Section denied the request for travel documents, stating [ICE] must submit either an original Iranian birth certificate or an original Iranian passport." (Doc. 14, at Ex. 2).

(4)    ICE does not have either an original Iranian birth certificate or an original Iranian passport for Mr. Momennia. (*Id.*)

(5)    Mr. Momennia told ICE that he does not have either an original Iranian birth certificate or an original Iranian passport. (*Id.*)

(6)    There is no allegation that Mr. Momennia has failed or refused to produce documents or to apply for travel documents or to otherwise fail to comply with the order of removal.

(7)    ICE "sent Momennia's case to the State Department to facilitate a third country removal. It is primarily the State Department that is working with countries to accept the third county nationals." (Doc. 14, at Ex. 4).

(8)    ICE is "not aware of a third country's acceptance of Momennia at this time." (*Id.*)

(9)    The State Department, DHS, and ICE are "working together on this removal." (*Id.*)

(10)    An Iranian official told news sources in September 2025 that hundreds of Iranian citizens held on U.S. immigration charges would be deported to Iran. (Doc. 14 at 18, n.6, citing https://apnews.com/article/iran-us-detainees-return-13fe92791f443524fa6f146c8ee279dd).

    a.    The referenced news article asserts that the U.S. government has not yet publicly acknowledged this deportation of Iranians.

    b.    The referenced news article contains no information about how many of those purported deportees had no original Iranian birth certificate or original Iranian passport, like Mr. Momennia.

Thus, as of October 6, 2025, more than six months after Mr. Momennia's re-detention, ICE's sole justification for his continued detention appears to be that "we're working on it" while conceding "a lack of visible progress." (Doc. 14, at 19). That does not suffice under either the regulations or *Zadvydas*. *See Yee S. v. Bondi*, 2025 WL 2879479, at *5 (D. Minn. Oct. 9, 2025) (finding that "the record does not support a determination that Petitioner is significantly likely to be removed in the reasonably foreseeable future" when Petitioner's home country of Burma was not an option for removal, ICE could "direct the Court to no facts in the record supporting a conclusion that any specific country where Petitioner is not a citizen would agree to accept him," and "Respondents simply repeat the vague and conclusory assertions that 'ICE is in the process of obtaining a travel document'"); *Sun v. Noem*, 2025 WL 2800037, at *2-3 (S.D. Cal. Sept. 30, 2025) ("Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may

be removed in the reasonably foreseeable future.'") (record citations omitted); *Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Roble v. Bondi*, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ").

Indeed, the regulations invoke *Zadvydas* by specifically stating: "[w]here the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances."  8 C.F.R. § 241.13(f).  The Federal Register commentary for § 241.13 similarly advised that

> [a]lthough [§ 241.13] does not set a specific time limit for consultation with the State Department, or for the Service's final decision on the likelihood of removal in the reasonably foreseeable future, the HQPDU will have to be mindful of the overall purposes of the detention laws, as interpreted by the Supreme Court. The time for the Service to determine the likelihood of removal must also be reasonable under the circumstances, in light of the interests at stake. the HQPDU review process should not, itself, give rise to the same kinds of concerns about "indefinite, perhaps permanent" detention that troubled the Supreme Court. *See Zadvydas*, at 2503 ("for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' would have to shrink.").

Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56970, 2001 WL 1408247(F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241).

"ICE, like any agency, has the duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)).

Based on ICE's violations of its own regulations, the undersigned concludes that Mr. Momennia's detention is unlawful and that his release is appropriate under 28 U.S.C. § 2241(c)(3). *See Yee S.*, 2025 WL 2879479, at *6 (ordering release because Petitioner has shown that ICE's re-detention of him . . . violated the law because ICE did not comply with its own regulations under section 241.13(i)(2)"); *Roble v. Bondi*, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) (holding that "[i]t goes without saying that ICE, like all government agencies, must follow its own regulations" and ordering release based on violation of 8 C.F.R. § 241.13(i)); *Sarail A. v. Bondi*, 2025 WL 2533673 (D. Minn. Sept. 3, 2025) (ordering release based on violation of 8 C.F.R. § 241.13(i)).

## IV. Mr. Momennia's Indefinite Detention Under § 1231(a)(6) Violates His Fifth Amendment Due Process Rights, Pursuant to *Zadvydas*.

Separately, and in addition to ICE's regulatory violations in Mr. Momennia's case, his current detention cannot continue in the face of the Supreme Court's interpretation of § 1231(a)(6) in *Zadvydas*. The Court held:

> A statute permitting indefinite detention of an alien would raise a serious constitutional problem. The Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person ... of ... liberty ... without due process of law." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects. And this Court has said that government detention

17

> violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and "narrow" nonpunitive "circumstances," where a special justification, such as harm-threatening mental illness, outweighs the "individual's constitutionally protected interest in avoiding physical restraint."
>
> The proceedings at issue here are civil, not criminal, and we assume that they are nonpunitive in purpose and effect. There is no sufficiently strong special justification here for indefinite civil detention—at least as administered under this statute.

533 U.S. at 690. Thus, the Court held that "interpreting [§ 1231(a)(6)] to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court then specified that detention of more than six months beyond the removal period is presumptively violative of Due Process such that

> [a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

*Id*. at 701. Mr. Momennia has met his burden, and Respondents have not met theirs.[8]

---

[8] It is worth noting that *Zadvydas* applies here, notwithstanding the somewhat different procedural posture between that case and the present one. In *Zadvydas*, two petitioners sought relief from their prolonged, underlined original detention by ICE. 533 U.S. at 684-86. Here, Mr. Momennia's case deals with a prolonged re-detention by ICE following a lengthy release under an OOS. While the petitioners were thus ostensibly differently positioned prior to federal review and thus perhaps subject to different regulatory provisions, *Zadvydas* remains applicable. *Zadvydas* is about "whether [§ 1231(a)(6)] authorizes the Attorney General to detain a removable alien indefinitely beyond the removal period." 533 U.S. at 682 (emphasis omitted). Mr. Momennia, whose criminal convictions gave ICE authority to detain him beyond the removal period, is detained under the same statute. (*See* Doc. 14, at 12-13). *See Qui v. Carter*, 2025 WL 2770502, at *4 (D. Kan. Sept. 26, 2025) (explaining, in re-detention case, that "petitioner's release is warranted under the Supreme

According to his verified petition, Mr. Momennia was re-detained by ICE on March 28, 2025. (Doc. 1, at 2; Doc. 14, at Ex. 2, at 2). Because his removal period began in September 1997 when his removal order became final, he is outside the removal period. Moreover, six months of detention have now passed since Mr. Momennia's re-detention, removing ICE's rebuttable presumption of reasonableness.[9] Mr. Momennia has met his initial burden by "provid[ing] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533. U.S. at 701.

"To meet the burden of establishing this, Mr. Momennia must demonstrate the existence of either institutional barriers to repatriation or obstacles particular to his removal." *Dusabe v. Jones*, No. 24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *report and recommendation adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025). Here, the barriers and obstacles identified by Mr. Momennia are many, as discussed above in the regulatory analysis. First, Iran has previously denied Mr. Momennia's request

---

Court's *Zadvydas* framework."). *But see Nguyen v. Hyde*, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025) (stating *Zadvydas* not applicable to re-detention cases).

[9] Mr. Momennia argues in favor of aggregating his previous detention with his current detention, which would result in a total detention period of "more than 500 days." (Doc. 1, at 6). Courts are mixed on whether such an aggregation is appropriate, but most appear to disfavor aggregation. *Contrast Liu v. Carter*, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."), *and Nma v. Ridge*, 286 F. Supp. 2d 469, 476 n.9 (E.D. Pa. 2003) ("It is not clear to the court, nor does the court necessarily agree, that the length of the petitioner's detention should be aggregated to include time he was detained prior to his release on an order of supervision."), *and Barrios v. Ripa*, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (declining to aggregate detention periods), *with Nhean v. Bott*, 2017 WL 2437268, at *2 & n.1 (D. Minn. May 2, 2017) (aggregating detention periods). In any event, such aggregation is unnecessary here; the outcome of the analysis is the same.

for travel documents when he requested them, explaining that he is listed as deceased in their systems. (Doc. 1, at 2-3). Iran's records mean that Mr. Momennia "cannot be deported to his country of origin" for the foreseeable future. (*Id.* at 3). Second, Mr. Momennia states that he was "told by multiple ICE agents that the agency has already tried to effect permission for third-country deportations but [has been] unsuccessful." (*Id.* at 3). These statements provide good reason to believe that deportation to either Iran or a third country are not significantly likely in the reasonably foreseeable future.

Respondents do not provide any evidence sufficient to rebut Mr. Momennia's claims, and indeed their evidence tends to corroborate that there is no significant likelihood of removal in the reasonably foreseeable future, again as discussed above in the regulatory analysis. Respondents confirm that Mr. Momennia has not received travel documents and significant barriers hinder receiving them in the future: "The Islamic Republic of Iran has indicated that it will not issue a travel document until an original Iranian birth certificate and an original Iranian passport are produced." (*Id.* at 18; *see id.* at Ex. 2, at 2). Respondents concede that they have neither document, and that even if they had both, this would only "start the process" of deportation to Iran. (*Id.* at 10-11) (quoting *Id.* at Ex. 3, at 3). Until both documents are discovered and provided, Iran has clearly indicated an "obstacle[ ] particular to his removal" to that country. *See Dusabe*, 2024 WL 5465749, at *3.

Respondents assert that "Federal Authorities are not unwilling to remove" Mr. Momennia, including to a third country. (Doc. 14, at 18). According to them, "[t]he State Department, DHS, and ICE are working to find another country willing to accept him,"

(*id.*), but concede they are "not aware of a third country's acceptance of Momennia at this time," (*id.* at Ex. 4, at 2).  As explained above, mere intent to find a third country is too speculative to permit indefinite detention or to overcome Mr. Momennia's showing.  Respondents cite a case for the proposition that a petitioner's burden is not satisfied where "progress, however slow, is being made in an individual case." (*Id.* at 19) (citing *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001)).  However, in that case, progress was made within specific communications between the United States and an identified country, Pakistan.  *Khan*, 194 F. Supp. 2d at 1137.  This argument is not applicable here, where the United States has identified no countries with which any level of progress is being made.  (*See* Doc. 14, at 11); *see also Zhuzhiashvili*, 2025 WL 2837716, at *3 (granting habeas where respondents did not "even identif[y] a single country to which removal might be possible"); *Vargas v. Noem*, 2025 WL 2770679, at *3 (D. Kan. Sept. 29, 2025) (granting habeas where respondent failed to "even identif[y] any possible countries to which petitioner might be removed").

Respondents have failed to rebut Mr. Momennia's claim that there is no significant likelihood of his removal in the reasonably foreseeable future and that he is thus being detained indefinitely in violation of his Fifth Amendment Due Process rights.  Accordingly, he is entitled to habeas relief and immediate relief from custody.  28 U.S.C. § 2241(c)(3).

## V.    Recommended Ruling and Notice of Right to Object.

For the reasons discussed above, the undersigned recommends that the Verified Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241.**  The undersigned recommends that Respondents **release Mr. Momennia from custody immediately**, subject to an appropriate Order of Supervision.  *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.").

Accordingly, the undersigned declines to address Mr. Mommenia's other requested injunctive and declaratory relief.  (*See* Doc. 1).  Moreover, the pending Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3) and Motion for Summary Decision Granting Writ and/or TRO Motion (Doc. 11) should be **denied as moot**.

**The court advises the parties of their right to object to this Report and Recommendation by October 22, 2025**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The Court further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 15th day of October, 2025.

AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE